THE STATE v. BIDLEMAN.

*Certiorari* to Hunterdon Quarter Sessions.

An appeal from an order of filiation, is in the nature of a new trial, and the *onus probandi* rests upon the respondents, and not on the appellant.

An order of filiation made upon the complaint of overseers of the poor, of a different county and township from that in which the child was born, is void.

*Mr. Saxton,* for the defendant.
*Mr. Wurts,* for the State.

The opinion of the Court, was delivered by

HORNBLOWER, CH. J.   On the twenty-fourth of January, 1837, two Justices of the Peace of the county of Hunterdon, made an order of filiation, &c. on Bidleman for the support of a female bastard child of Sarah Ann Cady.   On the 26th of April following, the defendant entered into recognizance with security, before a Justice of the Peace, with condition that the defendant should perform said order, or appear before the next Sessions,

&c. In the Term of August, 1837, of the Hunterdon Sessions, the counsel for the defendant moved that the hearing of the appeal from said Order, should come on, whereupon the counsel for the overseers of the poor, produced and read to the Court, the following documents, viz:

1. The order of filiation and maintenance aforesaid. 2. A warrant issued by a Justice of the peace, for the apprehension of Bidleman. 3. The affidavit of Jonathan Parker. 4. A warrant against Bidleman, issued by two Justices of the Peace, for not complying with the Order aforesaid ; and 5th. A recognizance entered into by the defendant and his surety, to perform the order or personally to appear at the Sessions, &c.

Having read these several documents, the counsel for the Township rested, and called upon the defendant to proceed by evidence to shew that the order ought not to have been made, &c : This the defendant declined doing ; and moved the Court to quash the order for the want of evidence to support it ; but after argument, the Court being of opinion that the *onus probandi*, lay upon the appellant, and that the order, must prevail until it was overturned by evidence, or by cause shewn on his part, refused his motion, and affirmed the order in all things., Subsequently, and before this *Certiorari* was allowed, the counsel in behalf of the township, in pursuance of an order of Sessions for that purpose, proceeded by writ of *scire facias* in the name of the Attorney General, against the defendant and his surety, on the recognizance so as aforesaid entered into by them, but no judgment was entered upon the *scire facias*, before the allowance of this writ; and all further proceedings thereon, were afterwards stayed by an order of this Court.

By this *Certiorari*, as well the order of filiation, the recognizance and the order of Sessions, as the proceedings on *scire facias* are brought before this Court, and various reasons have been assigned for quashing the orders and setting aside all the proceedings.

The Sessions undoubtedly committed an error, in affirming the order of filiation without proof. An appeal from such an order, is in the nature of a new trial ; but it would be of little use to the appellant, to have such new trial, if it was only to afford him an opportunity of giving negative evidence that he was

not the father of the bastard; a thing impossible to be proved, unless it should so happen that the defendant was absent in a foreign country, at the time of the conception; or some other special circumstances existed, utterly irreconcilable with the idea of his being the father of the child.

In ordinary cases, where the parties reside in the same neighborhood, an order of filiation made by two Justices, although made without any legal evidence, or indeed, without any evidence at all, would be absolutely conclusive upon the accused, and render an appeal utterly useless, if it is to remain in force, until the appellant produces negative proof, sufficient to establish the fact, that he is not the father of the child.

In *The King* v. *The Inhabitants of Newbury*, 4 *T. R.* 475, it was held that on an appeal from a poor rate, on the ground that the appellant had been *over-rated*, it was incumbent on the respondents first to establish their case. This was so ruled, notwithstanding it was urged that the practice at the Sessions had always been otherwise. The case of *The King* v. *Knill*, 12 *East.* 50, is on all fours with this. It was an appeal from an order of affiliation. The practice of the Sessions had uniformly been to require the appellant to begin and prove a sufficient case for quashing the order; but the Court of King's Bench ruled otherwise, upon the authority of the case in 4 *T. R.* 475, and in both those cases, the cause was remitted to the Sessions, to be proceeded in, heard and determined according to law.

In this case the order of the Sessions affirming the order of filiation, and all the proceedings had upon the recognizance by *scire facias*, must be quashed and set aside, and the record must be remitted to the Quarter Sessions to be proceeded in according to law. We cannot, as the counsel for the defendant calls upon us to do, go further and quash the original order. It is true as he contends, that this Court are to make such order in the premises as the Court below should have made. But this means such order, as the Sessions ought to have made after a hearing *upon the merits*. *The King* v. *Tenant*, 2 *Ld. Raym.* 14, 23; *S. C.* 2 *Str.* 716; 1 *Burn's Just.* 213 *tit. Bastards; Cro. Car.* 350. In this case, the Quarter Sessions made no adjudication upon the merits; they did not require the respondents to give any evidence in support of the order. If they had done so, and the respond-

The State v. Bidleman.

ents had failed to produce such evidence, and the Quarter Sessions had notwithstanding affirmed the order, this Court would undoubtedly, upon *Certiorari*, quash both orders.

It is also objected by the defendant's counsel, that the proceedings on *scire facias* ought to be set aside, on the ground, that the paper writing set up as a recognizance, is a mere nullity : that it is not authenticated, either by the certificate of the Justice, or by the signatures of the recognizors, and is therefore nothing more than a piece of blank paper. It seems to me, that upon this point, the defendant may make his election, and consider himself as under recognizance or not, as he pleases. If he never did enter into such recognizance, then he never appealed, and in that case, the whole proceeding before the Sessions, was *coram non judice* and void, and the original order of filiation stands in full force. In this view of the case, the defendant will probably prefer to waive this objection, and consider himself as under recognizance to appear before the Sessions.

It is stated in the brief handed up by the defendant's counsel, that it appears *on the face* of the original order, (which I have not seen) that the child was born in the township of Greenwich, in the county of Warren, and yet the order was made by two Justices of the county of Hunterdon, upon the complaint of the Overseers of the Poor of the township of Alexandria in that county. If this is so, it is undoubtedly fatal. *Quick* v. *Overseers of Amwell, Penn. R.* 1016 is conclusive upon this point; and the original order being now before us, on this *Certiorari*, we may look into it, and if erroneous and void upon the face of it, we may quash it at once, without sending it back to the Sessions, to have their judgment upon it. *Rex* v. *Stanley, Caldecott's R.* 172.

If therefore upon inspecting the original order, the facts appear to be as stated, let that order and the order of Sessions affirming it, and also all the proceedings had on the *scire facias*, be quashed and for nothing holden.

P. S. On inspection of the record, it appears that the birth of the bastard child, was in the township of Greenwich, in the county of Warren ; and consequently both orders, as well the original order of the Justices, as the order of Sessions affirming the same, must be quashed and set aside.

*Both orders and the proceedings on scire facias quashed and set aside.*